IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br>vs.<br><br>JAMES DONALD SURRELLS,<br><br>                Defendants | Case No. 3:24-mj-00330-MMS |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Special Agent Robert Douglas, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is submitted in support of a criminal complaint against JAMES DONALD SURRELLS for violating 18 U.S.C. § 2113(a) and 18 U.S.C. § 2113(g) – Credit Union Robbery.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I am a Special Agent with the Federal Bureau of Investigation and have been since May 2018. Since that time, I have been assigned investigative responsibilities in the areas of violent gangs and criminal enterprises investigation in the Anchorage Field Office where I am currently assigned. The Anchorage Field Office is located within the



District of Alaska. During this assignment, I have focused on drug, violent gang, criminal enterprises, threats cases and felon in possession of a weapon investigations. I have been assigned as the Bank Robbery Coordinator during my time with the Anchorage Field Office, and I have assisted with the investigation of numerous bank robberies between October 2018 and current. I have become familiar with the methods commonly used by criminal enterprises, violent criminals, gang members, bank robbers and felons in possession of weapons. I have been involved in cases involving the investigation and prosecution of defendants for violations of Title 18 of the United States Code. These investigations have included applications for, and the receipt and execution of, numerous search warrants for the seizure of evidence pertinent to the investigation.

4. Prior to my appointment with the FBI, I was employed with the Ontario Police Department (OPD) in Ontario, Oregon, as a Police Officer and Patrol Sergeant. As a Police Officer and Patrol Sergeant, I was assigned to and participated in traffic enforcement and investigations involving drug crimes, crimes against property, and crimes against persons, to include homicides. I also led and participated in a large number of drug-related arrests and surveillance operations. I also assisted in the preparation and execution of numerous search and arrest warrants.

5. In addition to my formal education, I have completed thousands of hours of training covering a variety of law enforcement related topics, including but not limited to: Oregon Department of Public Safety Standards and Training, Field Training and Evaluation Program, Conducting Death and Homicide Investigations, Certification as



Deputy Medical Examiner (Malheur County, OR), Drug Interdiction, Gangs, Crisis Intervention Team, Domestic Violence and Sexual Assault, Federal Bureau of Investigation Basic Field Training Course, Evidence Response Team, Post Blast Investigation School, Virtual Currency, Outlaw Motorcycle Gangs, Violent Crime and Active Shooter Training and Command Post Training.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## RELEVANT STATUTES AND REGULATIONS

7. The relevant statutory authority and terms used in this affidavit and its attachments are described and defined below.

   a. 18 U.S.C. § 2113(a), states: "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;"

   b. 18 U.S.C. § 2113(g), states: "As used in this section the term 'credit union' means any Federal credit union and any State-chartered credit union the accounts of which are insured by the National Credit Union

United States v. JAMES DONALD SURRELLS
Affidavit in Support of Criminal Complaint
Page 3 of 11



Administration Board, and any 'Federal credit union' as defined in section 2 of the Federal Credit Union Act. The term 'State-chartered credit union' includes a credit union chartered under the laws of a State of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States".

## INVESTIGATION AND PROBABLE CAUSE

8. Credit Union 1 (CU1) is a credit union that was, at all times relevant to this case, insured by the National Credit Union Administration Board. CU1 operates a number of branches in Anchorage, Alaska to provide financial services to its members.

9. At approximately 4:25 pm on July 13, 2024, a male entered the CU1 branch located at 4020 Debarr Road in Anchorage, Alaska. He was wearing what appeared to be a large red hooded sweatshirt with the hood pulled up over his head. There also appeared to be two other hooded sweatshirts underneath the large red sweatshirt. The second sweatshirt appeared to have a black hood, and the third appeared to have a black hood with a thin red line on it.

10. The male was reported to be a shorter, tan male that "sounded older" as he spoke based on CU1 employee accounts. Still photos of the male subject are depicted below:





United States v. JAMES DONALD SURRELLS
Affidavit in Support of Criminal Complaint
Page 5 of 11





United States v. JAMES DONALD SURRELLS
Affidavit in Support of Criminal Complaint
Page 6 of 11





11. The male subject waited in line until being called forward to an open teller window by a CU1 employee. Upon reaching the window, the male subject verbally told the CU1 employee to give him all the money. The male subject also stated that he had a gun. The CU1 employee paused because they couldn't believe what they had heard the male subject say. The male subject then stated that he was going to take his gun out. The CU1 employee then opened their cash drawer and handed over $450.00 in U.S. Currency. The $450.00 included three $100 bills, which had previously recorded serial numbers (AB02266846N; LI86324798A; and AL50132874D). The CU1 employee also handed over a GPS tracking device unit. The GPS tracking device was surrounded by two $20 bills and several $1 bills, which concealed the tracking device. The male subject took the money and walked out of the bank.

United States v. JAMES DONALD SURRELLS
Affidavit in Support of Criminal Complaint



12. The map below depicts the location of the CU1 branch and the surrounding businesses:



13. Anchorage Police Department (APD) Officers and Federal Bureau of Investigation (FBI) Special Agents (SA) responded to CU1 to investigate. APD Officers searched the area surrounding 1827 Columbine Street based off of GPS tracking information provided to them (APD case # 24-021595). APD Officers located a male subject, later identified as James Donald Surrells. Surrells was observed wearing what appeared to be a black hooded sweatshirt, with a second black and red hooded sweatshirt underneath. Surrells made statements to APD Officers that he was going back to jail, they

United States v. JAMES DONALD SURRELLS
Affidavit in Support of Criminal Complaint



should just shoot him, and he didn't want to go back to jail. Ultimately, Surrells was safely detained by APD Officers. Upon detention, APD Officers located U.S. Currency in Surrells' front, right pants pocket. The U.S. Currency located in Surrells pants pocket contained three $100 bills (with serial numbers AB02266846N; LI86324798A; and AL50132874D), one $50 bill and five $20 bills (totaling $450.00). APD Officers also located what appeared to be a stack of $20 bills with a red/brown "500" paper strap around it. APD Officers did not locate any weapons in Surrells' possession, nor were any weapons located in the area where Surrells was located. APD Officers transported Surrells and the U.S. Currency to the FBI Anchorage Office.

14. Special Agent (SA) Robert Douglas contacted CU1 Chief Executive Officer (CEO) Mark Burgess and CU1 Vice President of Member Services Shane Gustin at CU1 located at 4020 Debarr Road. Gustin confirmed that $450.00 in U.S. Currency had been stolen from CU1, along with the GPS tracking device. Gustin stated that the GPS tracking device would consist of two $20 bills on the outside, surrounding multiple $1 bills. Gustin said that the value of the money surrounding the GPS tracking device did not count as a loss to CU1, but was controlled by the GPS company. Gustin also provided SA Douglas with proof of National Credit Union Administration (NCUA) coverage for CU1, as well as the count record for the victim CU1 employee's cash drawer. The count of the cash drawer had been conducted by the victim CU1 employee and the CU1 Branch Manager, Rodel Bulaong Jr.



15. On July 13, 2024, at approximately 6:52 pm, SA Douglas and SA Michael Harkless attempted to interviewed Surrells at the FBI Anchorage Field Office. SA Douglas could see that Surrells was wearing a black hooded sweatshirt over top of what appeared to be a red/black hooded sweatshirt. Surrells was advised of his Miranda rights via an FD-395 Advice of Rights form. Surrells immediately advised that he wanted a lawyer. SA Douglas stated he would not ask Surrells any questions, but advised that the money, which had been found in Surrells possession, was going to be seized as evidence. SA Douglas also advised that the red hooded sweatshirt, which Surrells was wearing, was going to be seized. Surrells quickly advised that it wasn't what he had been wearing. SA Douglas reminded Surrells that he was not being asked any questions.

16. Clothing seized from Surrells was a red and black Champion zip up style hooded sweatshirt. SA Douglas noted that the hood of the sweatshirt was red and black and had a thin red line along the opening of the hood.

17. U.S. Currency that was seized from Surrells included: $450.00 in U.S. Currency consisting of 3x$100.00 bills (with serial numbers AB02266846N; LI86324798A; and AL50132874D) – 1x$50.00 bill – 5x$20.00 bills. The GPS tracking device, which was seized, included the following U.S. Currency totaling $53.00: 2x$20.00 bills – 13x$1.00 bills.

18. On July 13, 2024, James Donald Surrells was transported by SA Douglas and SA Harkless to the Anchorage Correctional Complex where he (Surrells) was remanded into federal custody.

United States v. JAMES DONALD SURRELLS
Affidavit in Support of Criminal Complaint



## CONCLUSION

19. Based upon the information above, your affiant submits that there is probable cause to believe that on July 13, 2024, JAMES DONALD SURRELLS took and carried away, by threat of a weapon, money belonging to, or in the care, custody, control, management, or possession of Credit Union 1 located at 4020 Debarr Road in Anchorage, Alaska in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2113(g) – Credit Union Robbery.

Respectfully submitted,

_____
Robert Douglas
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 on July 14, 2024

_____
THE HON. MATTHEW SCOBLE
U.S. MAGISTRATE JUDGE
DISTRICT OF ALASKA